# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
## Southern Division

| | |
|---|---|
| DARYN S. MORICI,<br>10 Rosanne Ln.<br>Rockville, MD 20851 | :<br>:<br>:<br>: |
|                Plaintiff, | :   Civil Action No. 8:21-cv-2290 |
| v. | : |
| TRANS UNION, LLC;<br>555 W. Adams Street<br>Chicago, IL 60661 | :<br>:<br>: |
|   SERVE: CSC-Lawyers Incorporating Service<br>            Company<br>            7 St. Paul Street, Suite 820<br>            Baltimore, MD 21202 | :<br>:<br>:<br>: |
| EXPERIAN INFORMATION SOLUTIONS, INC.;<br>505 City Parkway West<br>Orange, CA 92668 | :<br>:<br>: |
|   SERVE: The Corporation Trust, Inc.<br>           2405 York Road, Suite 201<br>           Lutherville Timonium, MD 21093 | :<br>:<br>: |
| EQUIFAX INFORMATION SERVICES, LLC;<br>1550 Peachtree Street, NW<br>Atlanta, GA 30309 | :<br>:<br>: |
|   SERVE: CSC-Lawyers Incorporating Service<br>            Company<br>            7 St. Paul Street, Suite 820<br>            Baltimore, MD 21202 | :<br>:<br>:<br>: |
|                Defendants. | : |

## COMPLAINT

COMES NOW Plaintiff Daryn S. Morici ("Plaintiff"), by counsel, and files this Complaint against Defendants, Trans Union, LLC ("Trans Union"), Experian Information Solutions, Inc. ("Experian"), and Equifax Information Services, LLC ("Equifax") (collectively, "Defendants"). Plaintiff alleges as follows:

## PRELIMINARY STATEMENT

1. This is an action for statutory, actual, and punitive damages; costs; and attorneys' fees brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*

2. The FCRA requires consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, *accuracy*, relevancy, and proper utilization of such information." 15 U.S.C. § 1681 (emphasis added). To achieve its goals, the FCRA contains requirements and obligations that consumer reporting agencies must follow when consumers dispute the accuracy of the information reported in their credit reports. 15 U.S.C. § 1681i.

3. In this case, Plaintiff's mortgage servicer furnished inaccurate, derogatory information to Experian, Equifax, and Trans Union, which was ultimately reported on Plaintiff's credit reports. After Plaintiff disputed the inaccurate information with each of the consumer reporting agencies, Defendants failed to investigate Plaintiff's disputes or correct the inaccurate reporting.

4. Accordingly, Plaintiff alleges claims against Experian, Equifax, and Trans Union for failing to reasonably ensure the maximum possible accuracy of Plaintiff's credit reports in violation of the FCRA, 15 U.S.C. §1681e(b), and for failing to fulfill their reinvestigation duties in violation of the FCRA, 15 U.S.C. § 1681i.

## JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 168l(p).

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to her claims occurred in this District and Division, where Plaintiff resides.

## PARTIES

7. Plaintiff Daryn Morici is a natural person and a consumer as defined by 15 U.S.C. § 1681a(c).

8. Trans Union is a foreign limited liability company conducting business in Maryland. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

9. Experian is a foreign corporation conducting business in Maryland. Experian is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

10. Equifax is a foreign limited liability company conducting business in Maryland. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

## FACTS

### The CARES Act

11. As part of the CARES Act, Congress provided relief for those affected by the COVID-19 emergency with respect to mortgage payments due under Federally backed mortgages.

12. Section 4022(b) of the CARES Act provides that "a borrower with a Federally backed mortgage loan experiencing a financial hardship due, directly or indirectly, to the COVID–19 emergency may request forbearance on the Federally backed mortgage loan." The borrower

may do so by "(A) submitting a request to the borrower's servicer; and (B) affirming that the borrower is experiencing a financial hardship during the COVID–19 emergency."

13. Upon receipt of a forbearance request, "such forbearance shall be granted for up to 180 days, and shall be extended for an additional period of up to 180 days at the request of the borrower." *Id.*

14. The CARES Act also amended the FCRA to ensure that consumers were not punished for electing forbearance. Specifically, the FCRA as amended now provides:

> If a furnisher makes an accommodation with respect to 1 or more payments on a credit obligation or account of a consumer, and the consumer makes the payments or is not required to make 1 or more payments pursuant to the accommodation, the furnisher shall—
>
> **(I)** report the credit obligation or account as current; or
> **(II)** if the credit obligation or account was delinquent before the accommodation—
>
> **(aa)** maintain the delinquent status during the period in which the accommodation is in effect; and
> **(bb)** the consumer brings the credit obligation or account current during the period described in item (aa), report the credit obligation or account as current.

15 U.S.C. § 1681s-2(a)(1)(F).

15. Although this section imposes a reporting requirement on furnishers, consumer reporting agencies have their own independent duties to review the information that they receive from furnishers and ensure that it is accurate before including it on a consumer's credit report.

16. For example, one of the FCRA's cornerstone provisions, 15 U.S.C. § 1681e(b), "deal[s] with the procedures consumer reporting agencies must follow when collecting and transmitting information." *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 414–15 (4th Cir. 2001).

17. This provision places "a very high duty of care" on the consumer reporting agencies and requires them to "follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." *Burke v. Experian Info. Sols., Inc.*, No. 1:10-cv-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011) (citing 15 U.S.C. § 1681e(b)).

18. Moreover, a consumer reporting agency's investigation responsibilities extend to independently identifying potential inconsistencies or errors in reporting that it receives from a furnisher and preventing them from appearing in a consumer's credit report:

> [W]hen a CRA learns or should reasonably be aware of errors in its reports that may indicate systematic problems (by virtue of information from consumers, report users, from periodic review of its reporting system, or otherwise), it must review its procedures for assuring accuracy and take any necessary steps to avoid future problems. Similarly, it should establish procedures to avoid reporting information from its furnishers that appears implausible or inconsistent.

Federal Trade Commission, 40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT, at 67 (July 2011).[1]

19. Therefore, each of the Defendants in this case were required to maintain procedures designed to ensure that the information they received from Plaintiff's mortgage servicer regarding her CARES Act forbearance was accurate and complied with the CARES Act reporting requirements.

### *Plaintiff's Mortgage and CARES Act Accommodation*

20. Bank of America, N.A. ("BANA") owns and services Plaintiff's mortgage loan.

21. In or around April 2020, Plaintiff requested a CARES Act forbearance from BANA. At the time that Plaintiff requested the forbearance, she was current on her mortgage.

---

[1] Available at https://www.ftc.gov/sites/default/files/documents/reports/40–years–experience–fair–credit–reporting–act–ftc–staff–report–summary–interpretations/110720fcrareport.pdf.

22. BANA gave Plaintiff a three-month forbearance.

23. At the end of the three-month period, Plaintiff requested and obtained an additional three-month forbearance.

24. On October 1, 2020, BANA sent Plaintiff a letter stating that her payment forbearance would end on October 31, 2020, and offered her a payment deferral program.

25. Under BANA's offer, the mortgage would be brought current, and the past-due principal, interest payments, out-of-pocket escrow advances, and third-party fees would be deferred and would not accrue interest. Instead, the unpaid deferred amounts would be due on the maturity date of the mortgage or on the sale or transfer of the property, refinance of the mortgage, or payoff of the loan. No other loan terms would be changed.

26. BANA's letter told Plaintiff that "to accept this offer, simply resume making monthly payments of $1,812.61 by November 15, 2020 on the existing loans, subject to changes in the escrow account for tax and insurance disbursements."

27. Plaintiff accepted the payment deferral by making her regular monthly mortgage payment of $1,812.61 on November 1, 2020.

28. Plaintiff continued making full and timely monthly mortgage payments each month after her forbearance ended.

### *Defendants' Inaccurate Credit Reporting*

29. Despite complying with all of BANA's instructions, Plaintiff learned in April 2021 that her credit reports reported her BANA mortgage as severely delinquent.

30. Specifically, BANA reported Plaintiff's mortgage to the credit bureaus as more than 120 days delinquent in April 2021 with a past-due balance of almost $11,000.

31.     To be clear, this reporting was inaccurate. Plaintiff complied with all of the terms of the forbearance agreement, so her loan was current and should have been reporting without any past-due balance or late payments.

32.     Defendants knew or should have known that Plaintiff was in a CARES Act forbearance because of the monthly reporting that BANA made about the account, including that Plaintiff's required monthly payments were $0 from May 2020 to October 2020.

33.     Combined with the fact that BANA reported her mortgage as current through March 2020, the sudden reporting of Plaintiff's mortgage as 120 days delinquent in April 2021 was—at a minimum—facially inconsistent and should have alerted Defendants that the reporting was inaccurate.

34.     Notwithstanding this obvious discrepancy, Defendants included the derogatory information about Plaintiff's mortgage without any safeguards in place to flag this inaccurate information or prevent it from being reported about the Plaintiff.

35.     On May 13, 2021, Plaintiff sent a dispute letter to TransUnion, Experian, and Equifax disputing the inaccurate information that BANA was reporting about her mortgage. She enclosed a copy of the payment deferral agreement and proof of her monthly payments.

36.     In response to Plaintiff's dispute, each of the Defendants failed to conduct an adequate investigation into Plaintiff's disputes.

37.     Instead, they forwarded Plaintiff's disputes BANA and solely relied on BANA's investigation of Plaintiff's mortgage account without conducting any independent investigation to determine whether BANA's reporting was accurate.

38. Defendants also refused to remove the inaccurate, derogatory information from Plaintiff's credit reports even though she provided supporting documentation showing that BANA's reporting was inaccurate.

39. As a result, Plaintiff's mortgage continued to report with a derogatory payment history and past due balance.

40. On June 7, 2021, Plaintiff sent follow-up dispute letters to Equifax, Experian, and TransUnion regarding the inaccurate and derogatory reporting of her mortgage, including supporting documentation showing that the reporting of her mortgage was inaccurate.

41. Defendants again failed to conduct an adequate investigation into Plaintiff's dispute and instead verified the inaccurate reporting, just as they did with Plaintiff's first dispute.

42. Had Defendants reviewed the proof of payments it would have been obvious that there was an inaccuracy. However, they failed to do so and made no material changes to their reporting.

43. As a result of Defendants' conduct, Plaintiff suffered significant actual damages. For example, her credit score dropped by more than 100 points as a result of Defendants' refusal to correct the inaccurate information in response to her credit disputes.

44. In addition, Plaintiff had planned to move cross country in the summer of 2021, but had to delay her plans because she would not qualify to purchase a new home due to her lowered credit score.

45. Plaintiff also suffered emotional distress, including, for example, because she had to delay her move, which placed great stress on her and was unable to get a mortgage loan in the spring of 2021.

### *Defendants' FCRA Violations Were Willful*

46. Defendants continue to rely on BANA's credit reporting even though they know that BANA is an unreliable furnisher.

47. Discovery will show that each Defendant has received thousands of consumer disputes in which the consumer complained that BANA was inaccurately reporting the consumer's mortgage payment history, a past due balance, or the consumer's account status.

48. In addition, according to he Consumer Financial Protection Bureau, BANA was the second most complained-about mortgage servicer in January 2017, a statistic that includes complaints for negative credit reporting after losing timely mortgage payments. CFPB, January 2017 Monthly Complaint Report, Vol. 19, p. 14, 18 (available at https://www.consumerfinance.gov/about-us/newsroom/cfpb-monthly-snapshot-spotlights-mortgage-complaints/).

49. There are also more than 2,200 complaints in the CFPB consumer complaint database about BANA's reporting of inaccurate information on consumers' credit reports.

50. In addition, BANA has been named as a defendant in hundreds of lawsuits by consumers alleging FCRA violations for inaccurate mortgage reporting. In many of these lawsuits, one of more of the Defendants was named as a co-defendant.

51. Despite notice of these lawsuits, none of the Defendants have any procedures in place, at any stage of their relationship with a furnisher (such as BANA), to: (a) receive and review its credit reporting procedures; (b) receive and review its dispute investigation procedures; or (c) audit—even selectively—any of the furnisher's accounts or credit reporting to determine if it is accurately reporting consumer file histories.

52. Discovery will show that in the last 10 years, no employee of TransUnion, Equifax or Experian has had a telephone, video conference, or in-person meeting longer than 30 minutes

to meaningfully inquire about, learn or examine the procedures used by BANA to comply with the FCRA.

53. Moreover, as a standard practice, Defendants do not conduct independent investigations in response to consumer disputes. Instead, they merely parrot the response of the furnisher despite numerous court decisions admonishing this practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230–31 (D. N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

54. Upon information and belief, and consistent with their standard policies and procedures, Defendants automatically generated their "investigation" results once BANA provided its responses to Plaintiff's disputes, verified BANA's reporting, and no employee took any additional steps after BANA provided its responses to Plaintiff's disputes.

55. Instead, Defendants blindly accepted BANA's version of the facts, despite knowing that BANA's credit reporting was unreliable, and continued to report the inaccurate, derogatory information on Plaintiff's credit report.

56. In addition, each of the Defendants has been sued in federal court by consumers alleging violations similar to the ones at issue in this case, including that it violated the FCRA by inaccurately reporting information from its customer-furnisher (such as BANA) without following

reasonable procedures to assure that the information parroted was maximally accurate or by failing to adequately investigate and respond to a consumer's dispute regarding inaccurate information in their credit file.

57. Just in the last 12 months alone, Experian has been named in FCRA lawsuits over 1,200 times, Equifax over 1,800 times, and TransUnion over 2,300 times.

58. Defendants continue the practice of parroting the response from their furnishers even though they had been repeatedly sued for failing to conduct a reasonable investigation as required by the FCRA.

59. Defendants do not intend to modify their dispute-processing procedures because doing so would drastically increase their operating expenses.

60. Instead, Defendants intentionally choose not to comply with the FCRA to lower their costs and increase profits. By example only and without limitation, their conduct was willful because it was intentionally accomplished through intended procedures and because their efficiency in processing disputes is believed to be more important than making sure that the disputes are investigated thoroughly and accurately. Accordingly, Defendants' violations of the FCRA were willful.

## COUNT ONE:
## VIOLATION OF FCRA, 15 U.S.C. § 1681e(b)
### (Defendants)

61. Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

62. Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files they published and maintained.

63.     As a result of Defendants' conduct, Plaintiff suffered concrete and particularized harm, including without limitation: inability to obtain a mortgage, a reduced credit score, and emotional distress.

64.     Defendants' conduct in violating § 1681e(b) was willful, rendering them liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorney's fees in an amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

## COUNT TWO:
## VIOLATION OF FCRA, 15 U.S.C. § 1681i
**(Defendants)**

65.     Plaintiff incorporates by reference each of the allegations set forth in the preceding paragraphs.

66.     Defendants violated multiple sections of § 1681i, including but not limited to: (1) failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate and record the current status of the disputed information in violation of § 1681i(a)(1); (2) failing to review and consider all relevant information submitted by Plaintiff in violation of §1681i(a)(4); (3) failing to promptly modify the item of information upon a lawful reinvestigation of § 1681i(a)(5)(A); and (4) failing to promptly delete the disputed, inaccurate information from Plaintiff's credit file in violation of § 1681i(a)(5)(A).

67.     As a result of Defendants' conduct, Plaintiff suffered concrete and particularized harm, including without limitation: inability to obtain a mortgage; a reduced credit score; and emotional distress.

68.     Defendants' conduct in violating § 1681i was willful, rendering them liable to Plaintiff for actual damages, statutory damages, punitive damages, costs, and attorneys' fees in an

amount to be determined pursuant to 15 U.S.C. § 1681n. In the alternative, Defendants were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff demands judgment for actual, statutory, and punitive damages against Defendants; her attorneys' fees and costs; prejudgment and post-judgment interest at the judgment rate; and such other relief the Court deems proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,
**DARYN S. MORICI**

By: */s/ Kristi C. Kelly*
Kristi C. Kelly, Esq., No. 07244
Kelly Guzzo, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7572 – Telephone
(703) 591-0167 – Facsimile
Email: kkelly@kellyguzzo.com

*Counsel for Plaintiff*